FOWLER *v.* FOWLER.

1. CONTRACTS—CONSTRUCTION—QUANTUM MERUIT.

   A woman who contracted with a farmer to take charge of his farmhouse, and "do the work for and take care of" the hired men, some of whom were employed continuously from year to year, is entitled, under her contract, to a reasonable compensation for washing and mending done for the men employed.

2. TRIAL—LEADING QUESTIONS—DISCRETION OF COURT.

   The allowance of leading questions is a matter entirely within the discretion of the trial court.

3. WITNESSES—VALUE OF SERVICES.

   A woman employed to do the general housework about a farmhouse is competent to testify, in an action to recover therefor, as to the nature and value of the services rendered.

4. SAME—EXPERT TESTIMONY.

   The value of such services is not so far a subject upon which a jury can form an opinion as to render inadmissible expert testimony in relation thereto.

5. EVIDENCE—DEFINITENESS.

   In an action against the owner of a farm for services rendered in looking after the farmhouse and in caring for the hired men, a witness who was employed upon the farm while plaintiff was performing the services in question may state the average number of hands employed.

Error to Hillsdale; Lane, J. Submitted January 5, 1897. Decided March 10, 1897.

*Assumpsit* by Kate Fowler against Frederick Fowler for services rendered. From a judgment for plaintiff, defendant brings error. Affirmed.

*Guy M. Chester* and *Fred M. Twiss* ( *Thomas E. Barkworth*, of counsel ), for appellant.

*C. M. Barre* and *E. J. March* ( *Watts, Bean & Smith*, of counsel), for appellee.

LONG, C. J. The plaintiff is the daughter-in-law of the defendant, and brings this action to recover from the defendant for her personal services rendered to him. It appears that the plaintiff's husband had died a short time previous to the time when she claims to have made the contract upon which this suit is brought. At that time she was living upon a farm of 400 acres owned by the defendant. She had one child, who was with her upon the farm. She resided there with her husband prior to his death, and claims that the defendant came there, and desired her to remain, after the death of her husband. The contract was not in writing, but is stated by the plaintiff as follows:

"It was in this second talk he made the arrangement with me to stay there and do the work. He came in and said he wanted to talk with me about staying there; that he would have to have men there, and there would have to be some one there to do the work and take care of them. He said he wanted me to stay there, and he would pay me well for staying. In pursuance with that agreement, I stayed there about two years and nine months, and did the work. My work consisted of the same kind as on any farm, 1 expect,—cooking, washing, ironing, and baking. He said that when he sold the farm he would provide a good home for me and the child; that he would furnish the house, furnish the provisions, and I was to do the work."

Upon the trial, plaintiff had judgment for $531.13. Defendant's contention on the trial was that he made no such arrangement with the plaintiff as claimed by her.

The plaintiff filed a bill of particulars in the case, claiming for 144 weeks' work, at $10 per week; for work, board, lodging, washing, and mending for defendant's hired men, and for defendant himself, from March 1, 1891, to November 1, 1893; for groceries and provisions furnished in keeping and caring for defendant's hired help, and for defendant himself; for money borrowed, $60, and interest on the same; and for money paid hired girls for labor for defendant.

The first question raised by counsel for defendant relates to the testimony given by the plaintiff, under objection and exception, in which she was permitted to state that she did the washing and mending for the hired men; the contention being that this was not a part of the contract which she claims to have entered into with defendant. We think this testimony was competent, under her claimed contract, as in it she states that the defendant said to her he would have men there, and there would have to be some one there to do the work and take care of them. This taking care of them must certainly be held to include the items of washing and mending for them. This contract cannot be construed as meaning that she was simply to provide the meals, as it is shown that certain of these men worked on the farm continuously from year to year, and had their board and lodging there, which was well known to defendant, and which seems to have been a part of the arrangement when the contract was made with the plaintiff.

Some question is raised that counsel for the plaintiff was permitted to put leading questions to the plaintiff. This was a matter entirely within the discretion of the trial court, and we find nothing in the record which evidences any abuse of that discretion.

The fourth assignment of error relates to a question

asked the plaintiff by her own counsel, as follows: "You
may tell the jury how much, in your judgment, these
services of yours were worth there by the week, from the
time you commenced until you left." The objection to
the question is that it was not shown that the plaintiff had
any knowledge of the value of the services rendered for
which the action is brought. We think this objection has
no force. The plaintiff testified that she arose at 5 o'clock
in the morning, and worked until 9 o'clock at night; that
she had churning to do, butter to make, beds to make,
and all the work there was to do in the farmhouse; and
that such services were worth $3 per week. She at least
had some knowledge of the amount of work done, and her
testimony as to the value was for the jury.

The fifth and sixth assignments relate to questions
asked of two of plaintiff's witnesses, as follows: "What
do you think it would average for the time you were
there, as close as you can estimate?" One witness had
testified that several men had worked there on the farm
during the times he was there, in 1891, 1892, and 1893,
and that there were more or less men at work there all the
time,—sometimes as high as 10 or 12, and never less than
1, besides himself,—and, in answer to the question asked,
stated that the average would be about 5, take it all
through, and that the plaintiff did the housework. The
other witness answered the same question, giving the
average number of men there. We think there was no
error in this.

Mr. King was called as a witness for the plaintiff. He
testified that he was formerly a farmer, and carried on a
large farm; that he had hired more or less help. He
was asked the general question as to what the plaintiff's
services were worth. The question contained a statement
covering fully and fairly plaintiff's claim as to what she
did there upon the farm. There is no claim of any mis-
statement of the plaintiff's claim, but the broad ground is
taken that the inquiry was not subject to expert opinion;
that it was a subject on which the jurors could form an

opinion from the facts as well as an expert. The witness answered that the services were worth from three to four dollars a week. We think this testimony was competent.

Some other questions are raised by the record, which we do not consider necessary to discuss. We have examined them, and are satisfied that a fair trial was had. What is stated in reference to the conduct of counsel for plaintiff, in the briefs of defendant's counsel, we have also examined; and, while the remarks might better have been left out of the case, we are of the opinion that they are not of such a nature as to call for a reversal. Some question is also raised upon the charge of the court, but we think it was fair, and that it fully stated the law governing the case.

The judgment must be affirmed.

The other Justices concurred.