BLAZO v. NEVEAU.

AUTOMOBILES—NEGLIGENCE—DIRECTED VERDICT—3-LANE HIGHWAY.
 Directed verdict for defendant in automobile negligence case
 where distinterested witness who had unobstructed vision testi-
 fied he could see no oncoming traffic in the center lane of a 3-
 lane highway for a sufficient distance ahead to permit defend-
 ant to pass in safety, a truck driver testified that from his
 elevated vantage point he could see all the way into a town and
 only noticed defendant in center lane when defendant applied
 his brakes and then he saw car in which plaintiff was passenger
 behind his truck, and the chief of police of the town testified
 that a person in a car coming from the east, as plaintiff's car
 was, could not see around the curve *held*, proper since the in-
 ference that defendant failed to see oncoming traffic in the
 center lane was not evidence of his culpability in a case where
 the undisputed facts showed there was nothing to be seen.

Appeal from Kent; Searl (Fred N.), J. Sub-
mitted Division 3 November 8, 1968, at Grand
Rapids. (Docket No. 2,786.) Decided March 29,
1968. Leave to appeal granted July 2, 1968. See
381 Mich 760.

Complaint by Dorothy Blazo against Raymond
A. Neveau and Arnold Neveau for injuries sustained
in automobile accident. Defendants' motion for
directed verdict granted. Plaintiff appeals. Af-
firmed.

REFERENCE FOR POINTS IN HEADNOTE
8 Am Jur 2d, Automobiles and Highway Traffic § 758 *et seq.*

*Miller, Johnson, Snell & Cummiskey (James A. Engbers,* of counsel), for plaintiff.

*Allaben, Massie, Vander Weyden & Timmer,* for defendants.

BURNS, J. This is an automobile negligence case which ended at the trial level when the judge directed a verdict of no cause of action in favor of defendants. The designation "defendant" in this opinion refers to Raymond Neveau, driver of the automobile, although his father, Arnold Neveau, was joined as a party defendant because of his ownership of the automobile involved in the accident.

The accident occurred in the center lane of a 3-lane highway, US 16, west of Fowlerville, at approximately 11 a.m. on a clear, dry Michigan football Saturday, October 8, 1960. Viewing the evidence in a light most favorable to the plaintiff, defendant's vehicle entered the center lane in an attempt to pass a line of several cars proceeding west ahead of him. Heavy traffic conditions and a slight right curve partially obscured his vision, although there were no posted restrictions prohibiting passing in the area. As defendant was overtaking a vehicle driven by Wayne J. Nickerson, the automobile in which plaintiff was a passenger began to enter the center lane from the opposite direction in an effort to pass a double tandem semitrailer. Defendant was unable to complete the overtaking of the Nickerson vehicle and pull into the westerly flow of traffic, and therefore he applied his brakes and almost brought his vehicle to a stop. Nevertheless, the cars collided left-front to left-front when the defendant's vehicle was squarely in the center lane and the other vehicle was mostly in the center lane but partially in the lane from which it had come.

After plaintiff had submitted her evidence pertaining to the issue of liability, the trial judge granted defendants' motion for a directed verdict on the ground that there was no proof from which the trial judge or the jury might lawfully infer defendant's alleged negligence. Plaintiff contends that there were factual issues of whether defendant's vehicle could return to the right lane after once starting to pass and whether defendant's visibility was sufficient to allow passing in safety.

CLS 1961, § 257.638 (Stat Ann 1960 Rev § 9.2338) provides:

"No vehicle shall be driven to the left side of the center of a 2 lane highway or in the center lane of a 3 lane highway in overtaking and passing another vehicle proceeding in the same direction unless such left side or center lane is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken."

The undisputed facts show that defendant complied with this statute in proceeding to overtake the Nickerson automobile. Mr. Nickerson observed the following:

"Well, I was out of the speed zone. I think I was the first man at the light, and traffic was a little heavier coming west, and I was up probably to 45, 50 miles an hour, and I see the truck coming right by the turn on this picture. And I see a car pull out, practically at the same time there was a car coming by me, was going by, and as he got in front of me I didn't see any more. The first thing I know here was a car up in the air right in front of me. It happened awful quick. I didn't know the car going east had came all the way out in the lane, but it evidently did."

Mr. Nickerson further testified as to his visibility and the position of defendant's vehicle:

"*Q.* [*Attorney for plaintiff*] When you first saw the truck, or first saw the Blazo car coming from Lansing going east, what was the position of the Neveau car, the one that was passing you?

"*A.* It must have been right, pretty near beside me. It wasn't by me.   *   *   *

"*Q.* [*Attorney for defendant*] Now, as you were traveling westerly you did notice that a car driven by, you later learned to be Ray Neveau, was going by you in the center lane?

"*A.* That's right.

"*Q.* And he was not going by in any extremely fast speed, was he?

"*A.* No, I wouldn't say so.

"*Q.* In a normal passing?

"*A.* Normal passing speed.

"*Q.* Before he got by you, Mr. Nickerson, you could see a long distance ahead to the west, couldn't you?

"*A.* Right.

"*Q.* And there were no vehicles in the center lane as he was going by you, were there?

"*A.* It started to get in the center lane.

"*Q.* When he got a little past you?

"*A.* No, just before.

"*Q.* Did you see a car swing out from behind the truck directly into the center lane?

"*A.* I did.

"*Q.* And did that happen at about the time that Ray Neveau was *even* with your car *or* a little bit *ahead* of it?

"*A.* Well, be one way or the other. I wouldn't say which way.

"*Q.* So how long Mr. Neveau had been in the center lane you don't know?

"*A.* I don't know.

"*Q.* But before that car came from behind the truck, you could see the truck coming toward you, couldn't you?

"*A.* That's right.

"*Q.* So when Mr. Neveau was going by you, there was nothing in the center lane until he got about even with you?

"*A.* Somewhere in there. Somewhere in there.

"*Q.* Did you see Mr. Neveau then immediately apply his brakes?

"*A.* Well, no, not then.

"*Q.* What were you trying to do, get out of the way?

"*A.* No. I didn't know there was another car in that center lane.

"*Q.* I see. In other words, if I put my two hands as the cars, and the right hand is yours and the left hand is Mr. Neveau's as he gets even with you that center lane was free, wasn't it?

"*A.* Probably was, yes.

"*Q.* Then as he crept ahead of you, is that when the car came out from behind the truck?

"*A.* No, no. The car started out behind the truck before I seen him.

"*Q.* Which one?

"*A.* Practically the same time. Then I noticed the car was on the left going by. But as he got ahead I lost sight of the other car going east.

"*Q.* Did you think that other car, the Blazo car was going to turn back into the other lane?

"*A.* I presumed that. I presumed that.   *   *   *

"*Q.* Mr. Nickerson, I will repeat that. When you were driving where you were, Ray Neveau is next to you, and you see the car come from behind the truck, Ray Neveau had a split-second to try and decide what to do, didn't he?

"*A.* I didn't know the car was out from behind the truck at that time.

"*Q.* Did it look to you as if it was still behind the truck?

"*A.* I didn't know. I just see him pull out. That is all." (Emphasis supplied.)

Before Mr. Nickerson testified the defendant had been cross-examined as follows:

"*Q.* [*Attorney for plaintiff*] And when you got to that point [*immediately to the left of the Nickerson car*] you saw the Blazo car traveling in the center lane, is that correct?

"*A.* [*Raymond Neveau*] Yes.  *  *  *

"*Q.* And you were in position at that time when you could not pull back into the right lane?

"*A.* True.

"*Q.* There is a curve on that highway in the general area that the accident occurred, isn't that correct?

"*A.* True.

"*Q.* Did you see the curve before you started to pass these cars?

"*A.* No, because I could see quite a distance ahead of me so I knew that the road must have been straight there because I could see a long way.

"*Q.* You assumed it was straight but it actually wasn't?

"*A.* Well, the vision, you could see so far regardless there, you know, in front of you. There was a long distance.  *  *  *

"*Q.* Do you remember seeing that truck before you got into the center lane starting to pass?

"*A.* Before I got out?

"*Q.* Correct. Before you got out there in the center lane do you remember seeing that truck?

"*A.* No, I don't recall.

"*Q.* Did you see the truck about the same time you saw the Blazo car?

"*A.* No. I saw the truck before that.

"*Q.* Then you saw the Blazo car?

"*A.* Right.  *  *  *

"*Q*. Was the Nickerson car at the time that the collision occurred directly opposite to you on the right-hand lane? Do you understand my question?

"*A*. No, it wasn't.

"*Q*. Where was the Nickerson car at the time of the collision?

"*A*. I was either just slightly past the Nickerson car or half a car length in front of him. I didn't have time to pull back in. In other words, I wouldn't have been able to swerve right in front of him, otherwise involving them in the accident also because when this car popped out that was the only thing I could do.

"*Q*. Do you recall whether there was any distance between the Nickerson car, that is the front of the Nickerson car and any other car that was in that same lane?

"*A*. I can't say positively, but I believe there would have been room because if I had been far enough ahead of the Nickerson car to safely move back in, that I could have moved back in, if there wouldn't have been any hinder [sic] coming toward me.

"*Q*. In other words, traffic at that point was such that you could not get back in the right-hand lane?

"*A*. At that very point I couldn't get back into the right-hand lane because of the Nickerson car on my right. I am not saying that there was another car immediately in front of them, no.

"*Q*. Do you remember whether there was or not?

"*A*. I don't believe there was one that close in front of them. I don't believe they were following too close. I think I could have pulled in."

Under direct examination the defendant testified:

"*Q*. [*Attorney for defendant*] O.K. Were there any yellow lines on the date of this accident on any of the lanes in this entire area as you proceeded toward East Lansing, that indicated to you there was absolutely no passing allowed?

"*A*. No. There were no markings there at all to prohibit it.

"*Q.* Were there any signs in any of the area from Fowlerville on up to and past the grounds, the fair grounds here, that said, 'No passing permitted'?

"*A.* No. No signs at all.

"*Q.* And did you nudge your car out into the center lane then to look ahead?

"*A.* Yes.

"*Q.* Can you, six years from the date of the accident, tell us today exactly where on this highway you were at the moment you first nudged to look ahead?

"*A.* No. I can't tell the exact spot on there.

"*Q.* When you did move to the center lane, how far would you say you could see ahead of you, Ray?

"*A.* Quite a distance.

"*Q.* What do you mean by 'quite a distance'?

"*A.* Oh, plenty of room to pass, quarter of a mile, half a mile.

"*Q.* Now, when you did make the move then to the center lane, can you tell us whether or not there were any vehicles in that center lane to the distance you have just identified for us, coming from the opposite direction?

"*A.* No, there was nothing.

"*Q.* Do you recall whether or not there were any vehicles in that center lane that appeared to be going the same direction that you were, that were then passing other cars?

"*A.* No. There was no one in front of me.

"*Q.* Do you remember whether or not at the time you moved to the center lane you could see traffic coming toward you but then located in the southernmost lane for eastbound traffic? That would be the lane next to the bottom of the white highway here in the picture.

"*A.* Yes. There was traffic in that lane. The only thing I remember about the traffic there was that there was a truck in that lane. * * *

"*Q.* All right. Tell us what you observed then after you got slightly past the Nickerson vehicle. What happened?

"*A.* As I was either preparing to pull back in to get ahead of the Nickerson car, or to go on and pass another car, suddenly this car was right in front of me. I couldn't pull back in because I knew I wasn't far enough in front of this car.

"*Q.* When you say 'this car,' you mean the Nickerson car?

"*A.* The Nickerson car. I wasn't far enough in front of him to get back in safely, and the best thing I could do was put on my brakes and try to stop because this car come out so quickly that I couldn't turn any other way, just try to stop.

"*Q.* Why couldn't you turn to the left?

"*A.* There was traffic coming that way.

"*Q.* Was that Mr. Yike's truck?

"*A.* There was a truck coming that way."

Mr. Yike, the truck driver, testified that from his elevated vantage point he could see all the way into Fowlerville but that he did not notice the defendant in the center lane until defendant applied his brakes. At that time Mr. Yike looked in his rearview mirror to find out the reason for defendant's action, and he saw the Blazo vehicle near the rear wheels of his trailer.

The chief of police of Fowlerville testified that a person in a car approaching the point of impact from the east in the center lane and overtaking traffic, could not see around the curve. The resulting inference that defendant failed to see oncoming traffic in the center lane is not evidence of his culpability in this case because the undisputed facts show that there was nothing to be seen. Defendant had already commenced to overtake the Nickerson vehicle at a point along US 16 where Mr. Nickerson, a disinterested witness who apparently had unobstructed vision, could see no oncoming traffic in the center lane for a sufficient distance ahead to permit the defendant to pass in safety. The danger created

by the appearance of the Blazo vehicle in the center lane was not of defendant's making.

The judgment of the trial court is affirmed. Defendants will have costs.

Lesinski, C. J., and Holbrook, J., concurred.