## BLAZO v. NEVEAU.

1. AUTOMOBILES—NEGLIGENCE—PASSENGERS—IMPUTED NEGLIGENCE.
   Negligence of plaintiff's husband in driving an automobile in which plaintiff was a passenger is not imputed to plaintiff in an action against defendant motorist for alleged negligence in proceeding in heavy traffic in middle lane of 3-lane highway as it curved to right (CLS 1961, § 257.638).

2. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   The party against whom a motion for directed verdict was made is entitled to the most favorable view of the testimony (GCR 1963, 515).

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur 2d, Automobiles and Highway Traffic § 669.
[2, 3] 5 Am Jur 2d, Appeal and Error § 886.
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 1011.
[5, 6] 8 Am Jur 2d, Automobiles and Highway Traffic § 783.
[7] 53 Am Jur, Trial § 349.

3. SAME—SUPREME COURT—DIRECTED VERDICT—EVIDENCE.

The Supreme Court does not ordinarily review questions of fact after they have been determined by the trier of fact and reviewed by the Court of Appeals, but where there is a directed verdict and the jury is not allowed to determine the facts, the Supreme Court reviews the testimony in considerable detail to determine whether a question of fact was presented.

4. AUTOMOBILES—DIRECTED VERDICT—EVIDENCE—INFERENCES.

A directed verdict for defendant in an automobile negligence action is improper when an inference other than contributory negligence of plaintiff could reasonably be drawn from testimony of a witness to the accident.

5. SAME—3-LANE HIGHWAY—NEGLIGENCE—QUESTION FOR JURY.

Evidence presented question of fact for jury as to whether defendant westbound motorist was negligent in entering and remaining in center lane of 3-lane highway so as to pass another westbound car, when the traffic was heavy and there was a view-restricting curve to the right, thereby providing a proximate cause of collision with eastbound car in which plaintiff was a passenger (CLS 1961, § 257.638).

6. SAME—3-LANE HIGHWAY—OVERTAKING AND PASSING.

The right of a motorist to overtake and pass other cars traveling in the same direction on a 3-lane highway is permitted conditionally if the "center lane is clearly visible and is free from oncoming traffic for a sufficient distance ahead" to permit such overtaking and passing (CLS 1961, § 257.638).

7. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE—TRIAL COURT'S REVIEW.

A trial judge must review all the evidence in passing on a motion for directed verdict and give to the opposing party the benefit of all conflicts and inferences and decide if there is any evidence from which the jury could reasonably find a verdict contrary to the moving party.

Appeal from Court of Appeals, Division 3, Lesinski, C. J., and Burns and Holbrook, JJ., affirming Kent, Searl (Fred N.), J. Submitted February 4, 1969. (Calendar No. 4, Docket No. 52,014.) Decided September 3, 1969.

10 Mich App 515, reversed.

Complaint by Dorothy Blazo against Raymond A. Neveau and Arnold Neveau for injuries sustained in an automobile accident. Defendants' motion for directed verdict granted. Plaintiff appealed to Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded for new trial.

*Miller, Johnson, Snell & Cummiskey (James A. Engbers, of counsel), for plaintiff.*

*Allaben, Massie, Vander Weyden & Timmer (Sam F. Massie, Jr., and Keith A. Vander Weyden, of counsel), for defendant.*

T. G. KAVANAGH, J. This is an appeal from a directed verdict in an auto negligence case. After plaintiff's proofs on the issue of liability were completed, the trial judge directed a verdict of no cause of action in defendants' favor on the grounds that there were no proofs adduced from which negligence reasonably could be inferred. The Court of Appeals (10 Mich App 515) affirmed.

In our review we have been mindful that plaintiff was a passenger in a car driven by her husband and the negligence, if any, of her driver is not imputed to plaintiff. *Bricker* v. *Green* (1946), 313 Mich 218 (163 ALR 697). Likewise we observed that upon review of a directed verdict, GCR 1963, 515, the opposite party is entitled to the most favorable view of the testimony. *Ingram* v. *Henry* (1964), 373 Mich 453.

The only issue presented requiring discussion is whether sufficient evidence was presented upon which a jury could find defendant negligent. "While ordinarily this Court does not review questions of

fact after determination of same by the trier of the facts and review by the Court of Appeals, inasmuch as the jury, the trier of facts in this case was not allowed to determine the facts" we must review the testimony in considerable detail to determine whether a question of fact had been presented. *Eisenzimmer* v. *Contos* (1967), 379 Mich 656, 661, 662.

The opinion of the Court of Appeals provides an excellent summation of the facts.

"The designation 'defendant' in this opinion refers to Raymond Neveau, driver of the automobile, although his father, Arnold Neveau, was joined as a party defendant because of his ownership of the automobile involved in the accident.

"The accident occurred in the center lane of a 3-lane highway, US 16, west of Fowlerville, at approximately 11 a.m. on a clear, dry Michigan football Saturday, October 8, 1960. Viewing the evidence in a light most favorable to the plaintiff, defendant's vehicle entered the center lane in an attempt to pass a line of several cars proceeding west ahead of him. Heavy traffic conditions and a slight right curve partially obscured his vision, although there were no posted restrictions prohibiting passing in the area. As defendant was overtaking a vehicle driven by Wayne J. Nickerson, the automobile in which plaintiff was a passenger began to enter the center lane from the opposite direction in an effort to pass a double tandem semitrailer. Defendant was unable to complete the overtaking of the Nickerson vehicle and pull into the westerly flow of traffic, and therefore he applied his brakes and almost brought his vehicle to a stop. Nevertheless, the cars collided left-front to left-front when the defendant's vehicle was squarely in the center lane and the other vehicle was mostly in the center lane but partially in the lane from which it had come."

Defendant's testimony was to the effect that he was in the center lane and had a clear view of the

highway ahead. There were no observable obstructions to his passing the automobiles on his right. The Blazo car suddenly appeared in the center lane and defendant had no choice but to apply his brakes since he could not safely enter either lane.

The truck driver, Mr. Yike, testified that he did not know when the Blazo automobile entered the center lane. He also said that he did not notice defendant's car in the center lane until defendant applied his brakes.

The chief of police of Fowlerville testified that a person in a car approaching the point of impact from the east in the center lane and overtaking traffic, could not see around the curve.

The only other eyewitness who was able to give testimony of probative value for the plaintiff is Mr. Nickerson, the driver of the auto defendant Neveau was attempting to pass at the time of the collision. To assay it properly, his testimony must be set forth at length:

"*Q*. [Attorney for plaintiff] Would you just explain to the jury what you observed?

"*A*. Well, I was out of the speed zone. I think I was the first man at the light, and traffic was a little heavier coming west, and I was up probably to 45, 50 miles an hour, and I see the truck coming right by the turn in this picture. And I see a car pull out, practically at the same time there was a car coming by me, was going by, and as he got in front of me I didn't see any more. The first thing I know here was a car up in the air right in front of me. It happened awful quick. I didn't know the car going east had came all the way out in the lane, but it evidently did.  *  *  *

"*Q*. When you first saw the truck, or first saw the Blazo car coming from Lansing going east, what was

the position of the Neveau car, the one that was passing you?

"*A.* It must have been right, pretty near beside me. It wasn't by me.

"*Q.* And then what happened to the Neveau car after that?

"*A.* He went on by. But as he got in front of me, why, they did hit head on. * * *

"*Q.* When did you first see the Neveau car?

"*A.* When?

"*Q.* The one that was passing you?

"*A.* When he was beside me.

"*Q.* That is the first time you observed it?

"*A.* That's right. * * *

"*Q.* [Attorney for defendant] Now, as you were traveling westerly you did notice that a car driven by, you later learned to be Ray Neveau, was going by you in the center lane?

"*A.* That's right.

"*Q.* And he was not going by in any extremely fast speed, was he?

"*A.* No, I wouldn't say so.

"*Q.* In a normal passing?

"*A.* Normal passing speed.

"*Q.* Before he got by you, Mr. Nickerson, you could see a long distance ahead to the west, couldn't you?

"*A.* Right.

"*Q. And there were no vehicles in the center lane as he was going by you, were there?*

"*A. It started to get in the center lane.*

"*Q. When he got a little past you?*

"*A. No just before.*

"*Q. Did you see a car swing out from behind the truck directly into the center lane?*

"*A.* I did.

"*Q.* And did that happen at about the time that Ray Neveau was even with your car or a little bit ahead of it?

"*A.* Well, be one way or the other. I wouldn't say which was.

"*Q.* So how long Mr. Neveau had been in the center lane you don't know?

"*A.* I don't know.

"*Q.* But before that car came from behind the truck, you could see the truck coming toward you, couldn't you?

"*A.* That's right.

"*Q. So when Mr. Neveau was going by you, there was nothing in the center lane until he got about even with you?*

"*A. Somewhere in there. Somewhere in there.*

"*Q.* Did you see Mr. Neveau then immediately apply his brakes?

"*A.* Well, no, not then.

"*Q. What were you trying to do, get out of the way?*

"*A. No. I didn't know there was another car in that center lane.*

"*Q.* I see. In other words, if I put my two hands as the cars, and the right hand is yours and the left hand is Mr. Neveau's, as he gets even with you that center lane was free, wasn't it?

"*A. Probably* was, yes.

"*Q. Then as he crept ahead of you, is that when the car came out from behind the truck?*

"*A. No, no. The car started out behind the truck before I seen him.*

"*Q.* Which one?

"*A.* Practically the same time. Then I noticed the car was on the left going by. But as he got ahead I lost sight of the other car going east.

"*Q.* Did you think that other car, the Blazo car was going to turn back into the other lane?

"*A.* I presumed that. I presumed that.   *   *   *

"*Q.* Well, now I will repeat it. I will repeat it. When you first saw a car that later turned out to

be the Blazo car it was in the southernmost lane behind a truck, wasn't it?

"*A.* That's right.

"*Q.* All right. Then sometime before the impact you saw that car start to move into the center lane, didn't you?

"*A.* I did.

"*Q.* My question is, when you saw that movement, did it look to you as if that car was trying to peek out to see if the center lane was free?

"*A.* That I couldn't say.

"*Q.* But at anytime when that car did start to come out, the car of Mr. Neveau is next to you in the center lane?

"*A.* That's right.    *    *    *

"*Q.* Mr. Nickerson, I will repeat that. When you were driving where you were, Ray Neveau is next to you, and you see the car come from behind the truck, Ray Neveau had a split-second to try and decide what to do, didn't he?

"*A. I didn't know the car was out from behind the truck at that time.*

"*Q. Did it look to you as if it was still behind the truck?*

"*A. I didn't know. I just see him pull out. That is all.*" (Emphasis supplied.)

Both lower courts properly accepted the fact that traffic conditions were heavy. Although there was conflicting testimony on the point, under the doctrine of favorable view, the conflict must be resolved in plaintiff's favor. Similarly, both courts found the slight curve in the highway affected visibility even though there was conflicting testimony on this point, as well.

The court observed that ordinarily such conduct as passing on a visibility restricted curve in heavy traffic could give rise to a finding of negligence, but said no finding of negligence could reasonably be made here because the testimony of defendant and

Mr. Nickerson indisputably indicated that there was nothing to be seen by defendant while passing. Both courts concluded Blazo suddenly and improperly pulled into the center lane. Thus, in their view the proximate cause of the accident was Blazo's improper entry of the center lane and whatever defendant's presumed negligence, it was unconnected with such improper entry. Therefore, they concluded Neveau was guilty of no negligence which caused the accident.

We think another inference could have been reasonably drawn from the testimony of Mr. Nickerson and thus a jury question was presented. *Detroit & Milwaukee R. Co.* v. *Van Steinburg* (1868), 17 Mich 99.

We have emphasized the testimony of Mr. Nickerson which we believe gives rise to an inference that Mr. Nickerson is, at the least, unsure when the Blazo vehicle pulled into the center lane. At most, the emphasized portion indicates Blazo was already properly in the center lane *before Neveau* attempted to pass Nickerson. Thus, reasonable minds on the jury could have inferred Blazo was in the center lane to be seen when defendant began his passing of Nickerson. Coupled with heavy traffic conditions and a curve in the road, the testimony of Nickerson presents a jury question whether or not defendant was negligent in passing under those conditions.

We emphasize that the judgment of both courts below rests on the soundness of their determination that no proof adduced would justify a verdict that Raymond Neveau was actionably negligent. We hold that the jury could have found from the evidence before it, had it been permitted to function in accordance with due instruction, (a) that driver Neveau was negligent in that he entered and then remained in the middle lane of a 3-lane highway in

violation of section 638 of the Michigan vehicle code (CLS 1961, § 257.638 [Stat Ann 1968 Rev § 9.2338]), and (b) that such violation was either the proximate or one of the two concurrent causes of the collision. Indeed, accepting it as it reads for the purpose of testing defendant's motion, the sum of all the testimony is such that the jury could have found both drivers causally negligent for having driven in the center lane without first having ascertained that the "center lane is clearly visible and is free from oncoming traffic for a sufficient distance ahead" to permit the overtaking and passing which section 638 conditionally permits.

The trial court weighed the evidence and credited the portion of Mr. Nickerson's testimony which was consistent with defendant's. On a motion for directed verdict it is the duty of the trial judge to review all the evidence, giving to the opposing party the benefit of all conflicts and inferences, and decide if there is any evidence from which the jury could reasonably find a verdict contrary to the moving party. In close cases it usually is prudent to delay decision on the motion until after the verdict of the jury is returned. Then a motion for judgment notwithstanding the verdict may be entertained since both motions are gauged by the same standard. If an appeal is taken thereafter, then the appellate court may terminate the action by either reinstating the jury's verdict or affirming the judgment notwithstanding the verdict. Otherwise, as this case illustrates, an entire new trial must be ordered upon reversal of the directed verdict at great expense to all concerned.

Reversed and remanded for new trial. Appellant may tax costs.

T. E. Brennan, C. J., and Dethmers, Kelly, Black, T. M. Kavanagh, and Adams, JJ., concurred.