## DUMA *v.* JANNI

1. INTOXICATING LIQUORS—UNLAWFUL SALE—PROOF.

> Jury could properly infer that the sale of an intoxicating beverage by the operator of a bar to a customer contributed to the customer's intoxication where, in an action under the dramshop act, there was testimony that the customer was intoxicated when he entered the bar and that the customer consumed some of the beverage (MCLA § 436.22).

2. INTOXICATING LIQUORS—INSTRUCTIONS TO JURY—UNLAWFUL SALE —INJURIES TO ANOTHER PERSON—CAUSATION.

> Instructions to the jury, in an action under the dramshop act, as to the causation issue were at least as favorable to defendant as the provisions of the act where the jury was instructed that it must find that the plaintiff proved that the defendant bar operator sold an intoxicating beverage to another customer while he was already intoxicated; that the other customer drank the beverage and that this contributed to his intoxication; that the assault upon plaintiff resulted wholly or in part from intoxication caused or contributed to by defendant's act in selling to the other customer; and that this was a contributing cause of plaintiff's injury (MCLA § 436.22).

3. INTOXICATING LIQUOR—INJURIES TO ANOTHER PERSON—CAUSATION—EVIDENCE.

> The jury was free to accept testimony in an action under the dramshop act that another customer caused plaintiff's injury and reject the disputed testimony tending to show that plain-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors §§ 603–607.
[2, 3] 45 Am Jur 2d, Intoxicating Liquors §§ 554, 582–585.
[4] 52 Am Jur, Torts § 30 *et seq.*
[5] 52 Am Jur, Torts §§ 603–607.
[6] 30 Am Jur 2d, Evidence §§ 945, 946, 954, 955, 957.

tiff's injuries may have been caused by pummeling administered by defendant and his bartender and, upon rejection by the jury of the inharmonious testimony, there was then but one theory of causation, indicating a logical sequence of cause and effect and a juridical basis for a determination in plaintiff's favor notwithstanding the existence of other plausible theories with or without support in the evidence (MCLA § 436.22).

4. TRIAL—INSTRUCTIONS TO JURY—TORTS—INJURY FROM OTHER EVENT—SEPARATION OF INJURIES.

Judge correctly charged the jury that if it determined that some injury was inflicted upon plaintiff by reason of some other event, then it must separate as best it can the injury that flowed from each separate cause.

5. INTOXICATING LIQUOR—THEORY OF CASE—ISSUES—INSTRUCTIONS TO JURY.

Refusal of judge in instructing the jury to state as part of defendant's theory, in an action under the dramshop act, that he claimed plaintiff attacked him was not error as the issue was whether defendant contributed to the intoxication of an intoxicated person who assaulted plaintiff and caused him injury, not whether defendant acted reasonably in the ensuing scuffle (MCLA § 436.22).

6. EVIDENCE—HEARSAY—EXCEPTIONS TO HEARSAY RULE—VALUE OF SERVICES.

Plaintiff may properly testify regarding rates of pay of local employers in the welding industry under an exception to the hearsay rule which permits a witness to testify to the value of his services according to current wages.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3 October 9, 1969, at Grand Rapids. (Docket No. 6,052.) Decided September 28, 1970.

Complaint by Ralph Duma under the dramshop act against Raymond Janni, operator of a bar, for injuries received in an assault by a patron in the bar. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Walter Martin*, for plaintiff.

*John D. MacKenzie*, for defendant.

Before: R. B. BURNS, P. J., and HOLBROOK and
LEVIN, JJ.

LEVIN, J. The plaintiff, Ralph Duma, was as-
saulted by an intoxicated person in a bar operated
by the defendant Raymond Janni. He commenced
this action under the dramshop act.[1] The defendant
tavern owner appeals a jury verdict in plaintiff's
favor.

On January 1, 1964, in the early hours of the new
year, plaintiff, his wife, and two other couples
entered the defendant's bar. The party was seated
at a table. Somewhat later the plaintiff and his wife
left their table to dance. On returning from the
dance floor the plaintiff found his chair occupied
by a stranger, Kenneth Renshaw, who was appar-
ently intoxicated.

The plaintiff asked Renshaw three times for his
chair, each time tapping Renshaw's shoulder to
summon his attention. In response to the third
request Renshaw rose abruptly from the chair and
violently struck the plaintiff, causing him to fall to
the floor. The plaintiff testified that before he could
rise the defendant and a bartender pounced on him
and held him down until they were forcibly removed
by one of the plaintiff's friends. Shortly thereafter
the police arrived and arrested Renshaw.

Upon returning home the plaintiff discovered a
severe back injury which required surgical correc-

---

[1] MCLA § 436.22 (Stat Ann 1970 Cum Supp § 18.993); MCLA
§ 436.29 (Stat Ann 1957 Rev § 18.1000). *Cf. DeVillez* v. *Schifano*
(1970), 23 Mich App 72; *Manuel* v. *Weitzman* (1970), 23 Mich App
96; *Hollerud* v. *Malamis* (1969), 20 Mich App 748.

tion.   He sustained substantial out-of-pocket expenses and is restricted in his work.

There was testimony tending to show that Renshaw was intoxicated when he entered the bar, that the defendant, nevertheless, sold him a glass of beer, and that he consumed some of the beer. The jury could properly infer that the defendant's sale contributed to Renshaw's intoxication. It was not obliged to accept Renshaw's assertion that the small amount of beer he claimed he consumed in the defendant's tavern did not add to his state of intoxication. Renshaw had been in the bar for 45 minutes to an hour before he sat in the plaintiff's chair. Several witnesses saw him drinking beer.

And, although Renshaw said he would be annoyed by the manner in which the plaintiff asked for the return of his chair even if he had been completely sober, he conceded that he is more easily provoked when he is under the influence of intoxicating liquor. It was for the jury to decide whether Renshaw's violent response was caused by his state of intoxication.

The trial judge's instructions to the jury on the causation issue were at least as favorable to the defendant as the provisions of the act.   Under the act a person injured "by an intoxicated person" by reason of the sale of intoxicating liquor to him while he is intoxicated has a right of action against "the person who shall by such selling  *  *  *  have caused or contributed to the intoxication  *  *  * or who shall have caused or contributed to any such injury."[2]

The trial judge instructed the jury that it must find that the plaintiff proved that the defendant sold an intoxicating beverage to Renshaw while he was already intoxicated, that Renshaw drank the bev-

[2] MCLA § 436.22 (Stat Ann 1970 Cum Supp § 18.993).

erage and that this contributed to his intoxication, that the assault upon the plaintiff resulted wholly or in part from intoxication caused or contributed to by the act of the defendant in selling to Renshaw, and that this was a contributing cause of the plaintiff's injury.

The defendant further contends that, even if the instructions were adequate, the plaintiff failed to prove that the act of the intoxicated person, Renshaw, caused or contributed to the plaintiff's injury.[3] He argues that the evidence established but equiponderant theories as to the cause of plaintiff's injury, forcing the jury to speculate as to the true cause.[4] He claims that it was not determinable whether the injuries were caused by Renshaw's blow or by the pummeling at the hands of the defendant and the bartender, for which the defendant would not be liable under the dramshop act. We are persuaded, however, that the jury could properly conclude from the evidence that Renshaw's act caused the plaintiff's injury.

The neurosurgeon who performed the operation on the plaintiff testified that "there is more potential acute extension of the spine by being knocked over than there is by being held flat" and that the blow dealt by Renshaw, as described by the plaintiff, could have been a precipitating cause of the injury which he sustained.

The plaintiff testified that Renshaw dealt him a "vicious blow and drove me over a table and I hit

---

[3] The defendant is clearly correct in contending that it was the plaintiff's burden to satisfy the jury "according to reason, observation and experience, the intoxication * * * was the efficient cause of the blow," that the result was fairly traceable to the intoxication. *Brockway* v. *Patterson* (1888), 72 Mich 122, 128; *Steele* v. *Thompson* (1880), 42 Mich 594, 597. Similarly, see *Wyatt* v. *Chosay* (1951), 330 Mich 661, 668, 669; *Long* v. *Dudewicz* (1959), 355 Mich 469, 478; *Eisenzimmer* v. *Contos* (1967), 379 Mich 656, 666; *Bryant* v. *Athans* (1960), 362 Mich 17, 18.

[4] *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417, 421.

the table very hard and I landed on the floor very hard" and that the defendant and the bartender then jumped on him and held him on the floor. The jury was free to accept that testimony and reject the disputed testimony tending to show that plaintiff's injuries may have been caused by the pummeling administered by the defendant and his bartender. Upon rejection by the jury of the inharmonious testimony, there then was but "one theory of causation, indicating a logical sequence of cause and effect" and there was, therefore, a juridical basis for a determination in plaintiff's favor "notwithstanding the existence of other plausible theories with or without support in the evidence."[5]

The judge correctly charged the jury that if it determined that "some injury was inflicted upon Mr. Duma by reason of some other event * * * then you must separate as best you can the injury that flowed from each separate cause."[6] This instruction is in accord with the rule enunciated in *Maddux* v. *Donaldson* (1961), 362 Mich 425, 432, 433, where the Court declared:

"It is our conclusion that if there is competent testimony, adduced either by plaintiff or defendant, that the injuries are factually and medically separable, and that the liability for all such injuries and damages, or parts thereof, may be allocated with reasonable certainty to the impacts in turn,

---

[5] *Kaminski* v. *Grand Trunk W. R. Co., supra,* p 422.

[6] Additionally, the jury was instructed:

"You will, therefore, if you are convinced that injury was inflicted by Mr. Renshaw, render unto Mr. Duma those damages which you feel are reasonable and proper and confined to the injury by Renshaw. Any injury you find resulted from any further activity by Mr. Janni and his bartender, you will exclude from consideration and from your verdict.

"The court instructs you that you must use your own best judgment on this question to the end that your verdict includes only damages that you find were due to an unlawful sale of intoxicating beverages to Mr. Renshaw and that's all."

the jury will be instructed accordingly and mere
difficulty in so doing will not relieve the triers of
the fact of this responsibility. This merely follows
the general rule that 'where the independent con-
curring acts have caused distinct and separate in-
juries to the plaintiff, or where some reasonable
means of apportioning the damages is evident, the
courts generally will not hold the tort-feasors jointly
and severally liable.'

"But if, on the other hand, the triers of the facts
* * * decide that they cannot make a division
of injuries we have, by their own finding, nothing
more or less than an indivisible injury, and the
precedents as to indivisible injuries will control.
They were well summarized in Cooley on Torts
in these words: 'Where the negligence of two or
more persons concur in producing a single, indi-
visible injury, then such persons are jointly and
severally liable, although there was no common duty,
common design, or concert action.' "[7]

The judge did not err, when instructing the jury,
in refusing to state as part of the defendant's theory
of the case that he claimed the plaintiff attacked
him. The issue in this case was whether the defend-

---

[7] The Court elaborated (pp 434, 435):

"The fact that one wrong takes place a few seconds after the other
is without legal significance. What is significant is that the injury
is indivisible. The blows of the ruffians referred to in *Heydon's Case*
(KB 1613), 11 Co Rep 5a (77 Eng Rep 1150), [—where in an
early case (p 430) 'the rule of joint and several liability dispensed
with the necessity of plaintiff's proof of just which ruffian inflicted
which injury when he was set upon by three'—] need not necessarily
have fallen upon the victim at the same instant of time, and un-
doubtedly did not. The reason for the rule as to joint liability for
damages was the indivisibility of the injuries, not the timing of the
various blows."

In a separate concurring opinion, Mr. Justice BLACK summarized
the holding of the Court in the following language (pp 450, 451):

"Now we affirm that, where the trier or triers of fact find they can-
not ascertain the amount of damages each wrongdoer has inflicted, then
such trier or triers are authorized to assess the plaintiff's damages
against any one or all of such wrongdoers on ground that the latter
have in law—participated in the infliction of a 'single, indivisible
injury.' "

ant contributed to the intoxication of an intoxicated person who assaulted the plaintiff and caused him injury, not whether in the ensuing scuffle the defendant acted reasonably. The jury, by its verdict, found that the plaintiff's injuries were caused by the attack made upon him by the intoxicated person, Renshaw, and that the defendant contributed to Renshaw's intoxication.

The other claimed instructional errors were not properly preserved by calling the judge's attention "specifically" to the matter to which the defendant objected and the grounds of objection, as required by GCR 1963, 516.2. The case was submitted to the jury under clear, fair, and complete instructions.

Finally, the defendant argues that allowing the plaintiff to testify regarding rates of pay of local employers in the welding industry was impermissible because the testimony was hearsay. One of the many exceptions to the hearsay rule is the doctrine that a person is deemed qualified to testify regarding the value of his own personal property by dint of ownership.[8] Analogously, it has been held that a witness may testify "what the value of his services was according to going wages at that time."[9] We also observe that both upon cross and direct examination the full details concerning the wage rates were fully explored.[10]

Affirmed. Costs to plaintiff.

All concurred.

---

[8] *Kavanagh* v. *St. Paul Fire and Marine Insurance Co.* (1928), 244 Mich 391; *Printz* v. *People* (1879), 42 Mich 144.

[9] *Richardson* v. *McGoldrick* (1880), 43 Mich 476. Similarly, *Foley* v. *Crosby* (1895), 105 Mich 635; *Fowler* v. *Fowler* (1897), 111 Mich 676; *In re Wigent's Estate* (1915), 189 Mich 507; *Coogan Finance Corporation* v. *Beatcher* (1932), 120 Cal App 278 (7 P2d 695).

[10] See *County of Kalamazoo* v. *Fidelity & Casualty Co.* (1936), 278 Mich 99, 105.