WEISS v HODGE (AFTER REMAND)

Docket No. 182881. Submitted January 7, 1997, at Detroit. Decided May 27, 1997, at 9:00 A.M. Leave to appeal sought.

Matthew Weiss brought an action in the Wayne Circuit Court against Gerald W. Hodge and Jason Debczak, seeking damages for injuries sustained when the plaintiff was assaulted by Debczak after Debczak was furnished alcoholic liquor in a pub owned by Hodge while Debczak allegedly was intoxicated. The action against Debczak was based on intentional tort and the action against Hodge was based on the dramshop statute, MCL 436.22; MSA 18.993. The jury found that the plaintiff was injured by Debczak, that Hodge furnished alcoholic liquor to Debczak when he was visibly intoxicated, that the furnishing of the liquor to Debczak was the proximate cause of the plaintiff's injuries, that the plaintiff incurred damages of $175,000, and that the injury was twenty percent attributable to Debczak's conduct and eighty percent attributable to Hodge's conduct. The court, Michael J. Talbot, J., entered a judgment consistent with the verdict and thereafter denied Hodge's motions for a new trial and remittitur. Hodge appealed and the plaintiff cross appealed. The Court of Appeals, CORRIGAN, P.J., and SAAD and YOUNG, JJ., granted Hodge's motion to remand the matter to the trial court for the limited purpose of determining whether the decision in *Rogalski v Tavernier*, 208 Mich App 302 (1995), precluded dramshop liability when the allegedly intoxicated person has committed an intentional tort. Unpublished order entered January 17, 1996 (Docket No. 182881). On remand, the trial court determined that *Rogalski* did not require a change in the outcome of the case.

After remand, the Court of Appeals *held*:

1. The dramshop statute permits dramshop liability premised upon intentional torts of an alleged intoxicated person where there is sufficient evidence that the furnishing of alcohol to the alleged intoxicated person is a proximate cause of the intentional tort.

2. The trial court did not err in concluding that the holding in *Rogalski*, which was based on MCL 436.33; MSA 18.1004, the statute prohibiting the sale or furnishing of alcoholic liquor to minors, was inapplicable to a dramshop action.

3. The liquor licensee's liability in a dramshop action, although rooted in the alleged intoxicated person's liability, is not necessarily equivalent to the alleged intoxicated person's liability. The licensee's conduct may be found to be more culpable than the alleged intoxicated person's conduct. The relative fault of the licensee may exceed the liability of the alleged intoxicated person.

4. There was sufficient evidence to support the jury's determination that Hodge was four times more culpable than Debczak.

5. The parties' stipulation allowing the use of a short verdict form prevents Hodge from asserting that the verdict and judgment should not be permitted to stand because the short verdict form, rather than the verdict form required by MCL 600.6305, 600.6306; MSA 27A.6305, 27A.6306, was used.

6. The trial court did not abuse its discretion in denying Hodge's motion for remittitur.

7. The trial court erred in denying the plaintiff's motion for costs under MCR 2.405. Hodge, by waiting until twenty-eight days before the trial to make his offer, accepted the possibility of having less than the full twenty-one-day period to respond to the plaintiff's counteroffer submitted a week later. Under the circumstances, the counteroffer did not have to be served twenty-eight days before the trial in order for the offeree (the party making the counteroffer) to be eligible for costs under MCR 2.405. The part of the order denying the motion for costs must be reversed and the matter must be remanded to the trial court to determine the plaintiff's actual costs and whether, in the interest of justice, an attorney fee award should be made under MCR 2.405(D)(3).

Affirmed in part, reversed in part, and remanded.

1. INTOXICATING LIQUORS — DRAMSHOP ACTIONS — INTENTIONAL TORTS.

A liquor licensee may be held liable under the dramshop statute for the intentional torts of an inebriated patron who was furnished alcohol by the licensee where the statutory predicates are met; dramshop liability may be predicated upon assaultive conduct of an alleged intoxicated person where there is sufficient evidence that the furnishing of alcohol to the alleged intoxicated person was a proximate cause of that person's violent behavior (MCL 436.22; MSA 18.993).

2. INTOXICATING LIQUORS — DRAMSHOP ACTIONS — CULPABILITY — LIABILITY.

A liquor licensee's dramshop liability is not derivative of an alleged intoxicated person's liability and is not predicated on vicarious liability for the alleged intoxicated person; although a licensee's liability is rooted in the alleged intoxicated person's liability, it is not equivalent to the alleged intoxicated person's liability and the licen-

see's conduct may be found to be more culpable and its liability greater.

3. STIPULATIONS — APPEAL.

A party that stipulated an arrangement that limits the party's rights to less than that which is otherwise required may not challenge the arrangement on appeal.

4. JUDGMENTS — OFFERS OF SETTLEMENT — COUNTEROFFERS — COSTS

A party that waits until shortly before trial to make an offer to stipulate entry of a judgment must be deemed to have accepted the possibility of having less than the full twenty-one-day period to respond to a potential timely counteroffer; the party making the timely counteroffer may be found to be eligible for an award of the party's actual costs under MCR 2.405.

*Law Offices of John C. Carlisle, P.C.* (by *John C. Carlisle*), for the plaintiff.

*Kallas & Henk, P.C.* (by *Leonard A. Henk*), for Gerald Hodge.

*Patricia Maceroni*, for Jason Debczak.

AFTER REMAND

Before: MICHAEL J. KELLY, P.J., and SAAD and H. A. BEACH*, JJ.

SAAD, J.

I

NATURE OF THE CASE

This dramshop liability action raises, among other questions, one dispositive issue: may a liquor licensee under the dramshop statute (MCL 436.22; MSA 18.993) be held liable in tort for the intentional act—a physical attack upon another patron—of an inebriated patron who was furnished liquor by the licensee?

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The defendant dramshop owner argues that while the dramshop statute contemplates liability for negligent torts, it does not create liability for intentional or criminal conduct. We reject defendant's argument and hold, as a matter of law, that the dramshop statute does impose such liability where, as here, the statutory predicates are met.

## II

### FACTS AND PROCEEDINGS

Defendant Gerald Hodge is the owner of Pete's Sake Pub in Detroit. Hodge's son, Michael (hereafter Hodge), is the pub's manager and serves as bartender. On the evening of May 14, 1993, Hodge was tending bar, and defendant Jason Debczak (the assailant), Jacqueline Notchel, Barbara Trebovich, and Tim Cheatham were in the pub. Debczak had arrived early in the evening and was still there at 2:00 A.M., the morning of May 15.

Witnesses gave varying accounts of Debczak's state of intoxication at 2:00 A.M. Notchel testified that Debczak was staggering, slurring his speech, and acting obnoxious. Debczak himself testified that he was intoxicated and that Hodge served him at least eight beers and three shots before the assault. Hodge testified that Debczak did not appear to be intoxicated and that he had only consumed three or four beers while he was in the bar.

Around 2:00 A.M., plaintiff Matthew Weiss arrived at the pub, looking for his girlfriend. The girlfriend was a regular customer, and plaintiff disapproved of her patronization of the pub. There was also antipathy between plaintiff and Cheatham, apparently because plaintiff was jealous of Cheatham's friendship with

the girlfriend. Notchel told plaintiff that his girlfriend was not there and then she asked plaintiff for a ride home.

The testimony was conflicting about the next transaction: Debczak testified that Cheatham offered to pay Debczak $20 if he would assault plaintiff. Cheatham testified that Debczak removed $20 from Cheatham's wallet and offered to assault plaintiff if Cheatham would buy him more drinks.

Shortly thereafter, when Notchel, Trebovich, and plaintiff left the pub, Debczak was waiting outside with a beer bottle in his hands. Debczak began to swear and speak abusively to plaintiff, and Debczak then smashed the beer bottle over plaintiff's head. The two struggled. Plaintiff, Notchel, and Trebovich all testified that Hodge emerged from the pub carrying a pool bridge and attempted to strike plaintiff with it. Plaintiff then got a baseball bat from his car to defend himself. Hodge testified, however, that he went outside to break up the fight and ordered the group to disperse, and that plaintiff then ran into the pub with a bat and smashed a window. According to Hodge, at that point he chased plaintiff out of the pub with a pool bridge, although Hodge denied hitting plaintiff. Notchel and Trebovich took plaintiff to the hospital.

Plaintiff sued Debczak for intentional tort and he also sued Gerald Hodge on a dramshop theory, alleging that plaintiff lost time from work, incurred medical expenses, and suffered other physical, neurological, and psychological injury as a result of the assault. The jury found: (1) that plaintiff was injured by Debczak, (2) that Gerald Hodge furnished alcoholic liquor to Debczak when he was visibly intoxicated,

(3) that the furnishing of alcoholic liquor to Debczak was the proximate cause of plaintiff's injuries, (4) that plaintiff had incurred damages of $175,000,[1] and (5) that plaintiff's injury was twenty percent attributable to Debczak's conduct and eighty percent attributable to Gerald Hodge. The trial court denied Gerald Hodge's motions for a new trial and for remittitur.

Gerald Hodge appealed and the plaintiff cross appealed. Gerald Hodge then moved in this Court for a remand, arguing that our decision in *Rogalski v Tavernier*, 208 Mich App 302; 527 NW2d 73 (1995), precluded dramshop liability when the allegedly intoxicated person (AIP) has committed an intentional tort. Gerald Hodge's motion for remand was granted by this Court in an unpublished order entered January 17, 1996 (Docket No. 182881). On remand, the trial court determined that *Rogalski* should not change the outcome of the case. After remand, we agree and affirm.

III

ANALYSIS

A

The dispositive issue here is whether a dramshop can be held liable for intentional torts. The starting point of analysis is the liability portion of the dramshop statute itself:

---

[1] As will be discussed later, the parties stipulated the use of a short-form jury verdict that did not comply with MCL 600.6305, 600.6306; MSA 27A.6305, 27A.6306, and they agreed to waive any claim of violation of the tort reform act by using the shorter form. Rather than asking the jury to determine separately plaintiff's economic, noneconomic, past, and future damages, the form asked for a total figure.

> Except as otherwise provided in this section, an individual who suffers damage or is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor had caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action pursuant to this section, the plaintiff shall have the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death. [MCL 436.22(4); MSA 18.993(4).]

We note initially that the dramshop statute itself draws no distinction between injuries caused by an intentional tort or those caused by a negligent tort. The language of the statute imposes liability simply where the requisite causal connection between the prohibited furnishing of liquor and the resulting injuries is met. The statute requires that if

—an individual is injured by a "minor or visibly intoxicated person," and

—the injury resulted from the "unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person," and

—the unlawful sale of the alcohol "is proven to be a proximate cause" of the injury, then the individual who is injured "shall have a right of action . . . against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death."

While the statute does require that the sale of alcohol be a proximate cause of the resulting injury, it does not limit liability only to negligently inflicted injuries.

Further, defendant's reliance upon *Rogalski, supra,* for the proposition that the *dramshop statute* does not create liability for intentional torts is misplaced. *Rogalski* addressed the issue whether a social host who furnished alcoholic beverages to a minor in contravention of MCL 436.33; MSA 18.1004[2] (the statute prohibiting the sale or furnishing of alcoholic liquor to minors) could be held liable for damages arising from the minor's criminal acts committed while under the influence of alcohol. Importantly, *Rogalski* did not address liability under the dramshop statute.

Although *Rogalski* refused to extend tort liability to a host for intentional torts, its holding was premised on an interpretation of the statute prohibiting the sale

---

[2] MCL 436.33; MSA 18.1004 provides, in relevant part:

(1) Alcoholic liquor shall not be sold or furnished to a person unless the person has attained 21 years of age. Except as otherwise provided in subsection (2) and subject to subsection (4), a person who knowingly sells or furnishes alcoholic liquor to a person who is less than 21 years of age, or who fails to make diligent inquiry as to whether the person is less than 21 years of age, is guilty of a misdemeanor. . . . . Notwithstanding section 50 and except as otherwise provided in subsection (2), a person who is not a retail licensee or a retail licensee's clerk, agent, or employee and who violates this subsection shall be fined $1,000.00 and may be sentenced to imprisonment for up to 60 days for a first offense . . . .

(2) A person who is not a retail licensee or the retail licensee's clerk, agent, or employee and who violates subsection (1) is guilty of a felony, punishable by imprisonment for not more than 10 years, or a fine of not more than $5,000.00, or both, if the subsequent consumption of the alcoholic liquor by the person less than 21 years of age is a direct and substantial cause of that person's death or an accidental injury that causes that person's death.

or furnishing of alcoholic liquor to minors, which, unlike the dramshop statute, does not by its terms create civil liability for its infraction. The statute prohibiting the sale or furnishing of alcoholic liquor to minors leaves it to our courts to interpret the civil consequences for its breach. *Longstreth v Gensel*, 423 Mich 675; 377 NW2d 804 (1985). In *Rogalski, supra* at 307, our Court refused to extend judicially created consequences to intentional or criminal conduct based upon the statute prohibiting the sale or furnishing of alcoholic liquor to minors. In contrast, the dramshop statute states that, if the other requisites are met, liability may be imposed where the furnishing of alcohol is proved to be "a proximate cause" of the injury. We do not read this statute as affording this Court the discretion to impose liability only for negligently inflicted injuries.

Michigan case law also supports the foregoing interpretation of the dramshop statute; dramshop liability has been premised upon assaultive behavior of an intoxicated patron in earlier cases. In *Duma v Janni*, 26 Mich App 445; 182 NW2d 596 (1970), we affirmed a jury verdict on a dramshop claim against a tavern, where liability was predicated upon an assault. There, the plaintiff returned from the dance floor to his seat in the tavern to discover the seat occupied by a stranger (the AIP). The plaintiff three times asked the AIP to leave his chair, and in response to the third request, the AIP rose and violently struck the plaintiff. Before the plaintiff could stand up again, the bar owner and a bartender pounced on him until they were removed by the plaintiff's friends. The plaintiff sued the tavern on a dramshop theory and the jury found in the plaintiff's favor. On appeal, the

tavern's primary challenges were to the jury instructions and to inadequate proof of causation. However, the Court stated in *Duma*:

> The jury could properly infer that the defendant's sale [of alcohol to the AIP] contributed to [the AIP's] intoxication. . . .
>
> And, although [the AIP] said he would be annoyed by the manner in which the plaintiff asked for the return of his chair even if he had been completely sober, he conceded that he is more easily provoked when he is under the influence of intoxicating liquor. It was for the jury to decide whether [the AIP's] violent response was caused by his state of intoxication.
>
> The trial judge's instructions to the jury on the causation issue were at least as favorable to the defendant as the provisions of the [dramshop] act. . . .
>
> The trial judge instructed the jury that it must find that the plaintiff proved that the defendant sold an intoxicating beverage to [the AIP] while he was already intoxicated, that [the AIP] drank the beverage and that this contributed to his intoxication, that the assault upon the plaintiff resulted wholly or in part from intoxication caused or contributed to by the act of the defendant in selling to [the AIP], and that this was a contributing cause of the plaintiff's injury.
>
> The defendant further contends that, even if the instructions were adequate, the plaintiff failed to prove that the act of the [AIP], caused or contributed to the plaintiff's injury. He argues that the evidence established but equiponderant theories as to the cause of plaintiff's injury, forcing the jury to speculate as to the true cause. He claims that it was not determinable whether the injuries were caused by [the AIP's] blow or by the pummeling at the hands of the [bar owner] . . . . We are persuaded, however, that the jury could properly conclude from the evidence that [the AIP's] act caused the plaintiff's injury.
>
> \*     \*     \*
>
> The judge correctly charged the jury that if it determined that "some injury was inflicted upon [the plaintiff] by rea-

son of some other event . . . then you must separate as best you can the injury that flowed from each separate cause."
. . .

\*          \*          \*

. . . The issue is this case was whether the defendant [tavern] contributed to the intoxication of an intoxicated person who assaulted the plaintiff and caused him injury, not whether in the ensuing scuffle the defendant acted reasonably. The jury, by its verdict, found that the plaintiff's injuries were caused by the attack made upon him by the [AIP], and that the defendant contributed to [the AIP's] intoxication. [*Id.* at 448-452.]

Therefore, there is clear precedent for predicating dramshop liability upon assaultive conduct of an AIP where there is sufficient evidence that furnishing the alcohol to the AIP is a proximate cause of the violent behavior.

This conclusion is supported by two other recent cases that, while not squarely addressing the issue of liability for intentional torts, have permitted dramshop liability for intentional assaults inflicted by an inebriated patron upon another person. In *Brown v Swartz Creek Memorial Post 3720—Veterans of Foreign Wars, Inc,* 214 Mich App 15; 542 NW2d 588 (1995) (decided nine months after *Rogalski*), this Court implicitly held that liability against a licensee may be predicated on an AIP's criminally assaultive behavior. In *Brown,* the AIP drank at the defendant's facility and then went to the home of his estranged wife, where he assaulted the plaintiff (whom the AIP knew was having an affair with his wife). The plaintiff brought an assault and battery action against the AIP and a dramshop action against the VFW. The jury found that the VFW did furnish alcohol to the AIP while

he was visibly intoxicated, that the VFW's act of furnishing the alcohol was a proximate cause of the plaintiff's injuries, and that the plaintiff was forty percent negligent. At trial, the plaintiff's comparative negligence was deducted only from the award in the tort action against the AIP and no similar reduction was made in the award against the VFW. On appeal, this Court vacated the judgment against the VFW, on the ground that the judgment should have been reduced by the plaintiff's comparative fault:

> [T]he application of comparative fault is more equitable in this case, because the VFW should not be held responsible for the intentional acts of the two combatants. The VFW's role was limited to supplying the alcohol. While the alcohol may have aggravated matters somewhat, the altercation was primarily attributable to the underlying animosity between the parties because of their own personal situation. Under these circumstances, the judgment [against the VFW] should be reduced to reflect the relative degree of fault of the plaintiff. [*Id.* at 24-25.]

Importantly, however, no new trial was ordered—the matter was simply remanded for entry of a new judgment. The decision thus supports the conclusion we reach in the instant case—that liability against a licensee may be predicated on assaultive behavior.

Similarly, in *Mariin v Fleur, Inc,* 208 Mich App 631; 528 NW2d 218 (1995), the Court's analysis assumes that a dramshop action can be premised upon a physical assault. There, the plaintiff, an off-duty police officer socializing at a bar, was assaulted and injured in the bar by an AIP. There was "bad blood" between the plaintiff and the AIP because the plaintiff previously had arrested the AIP in an unrelated incident. Following the assault, the plaintiff sued the AIP and

the bar, the latter under the dramshop act. The trial court granted summary disposition for the bar, finding liability foreclosed by the fireman's rule. However, on appeal, we reversed and remanded for further proceedings, finding the fireman's rule inapplicable because the plaintiff's presence at the bar was not occasioned by his duties as a police officer. *Id.* at 636. Again, the implicit assumption is that liability against the bar may be predicated upon assaultive acts of an AIP.

In light of the language of the dramshop statute, as well as these cases that have permitted dramshop liability premised upon assaultive behavior of AIPs, we decline to adopt the reasoning of *Rogalski* in the dramshop context. The trial court did not err in concluding that *Rogalski* was inapplicable to a dramshop action.

B

Gerald Hodge also asserts that the jury's verdict here was incongruent and legally inconsistent because the jury found the dramshop defendant eighty percent at fault and defendant Debczak only twenty percent at fault. Gerald argues that, because a liquor licensee's liability under the dramshop act is predicated on the liability of the AIP, it is not possible for the licensee to be four times more liable for the plaintiff's injuries than the AIP. This argument appears to be based on two alternative theories: first, that the liquor licensee cannot, as a matter of law, be more culpable for the plaintiff's injuries than the AIP, and, second, that the eighty percent/twenty percent apportionment of culpability in this case is unsupported by the evidence. We address both theories.

This Court has, in dicta, indicated that dramshop liability is not derivative of the AIP's liability. In *Archer v Burton*, 91 Mich App 57; 282 NW2d 833 (1979), this Court recognized that it is conceivable that a licensee might be liable when the AIP is not:

> If an intoxicated person voluntarily engages in a fistfight, he is engaging in wrongful activity. Therefore, even if the intoxicated person is not liable to the plaintiff on the theory of self-defense or mutual fight, the bar might still be liable to the plaintiff if the defendant's intoxication by the bar was a contributing factor to his engaging in the fight. [*Id.* at 60-61.]

This statement, though not directly relevant here, indicates that a licensee's liability is not predicated on vicarious liability for the AIP and that the licensee's conduct might be more culpable than the AIP's conduct.

Further, the fact that comparative fault applies to dramshop actions supports the conclusion that the relative fault of the liquor licensee may exceed the liability of the AIP. *Brown, supra* at 21-22. Thus, because juries in dramshop cases are required to apportion fault[3] among the multiple tortfeasors, including both the AIP and the liquor licensee, this permits a jury to find varying degrees of culpability between these parties. Thus, contrary to Gerald's implicit argument, a liquor licensee's liability, although rooted in the AIP's liability, is not necessarily equivalent to the AIP's liability.

Gerald also asserts that the jury could not have rationally concluded that Gerald was four times more liable than Debczak and that this verdict must have

---

[3] MCL 600.6304; MSA 27A.6304.

been based on prejudice, passion, or an urge to punish Gerald. In substance, this is a challenge to the sufficiency of the evidence supporting the verdict.

Debczak testified that he would not have accepted Cheatham's offer to assault plaintiff for payment if he had not been intoxicated. Other witnesses testified that Debczak had been drinking in Pete's Sake Pub for several hours, that he was so intoxicated that his speech and walk were impaired, and that Michael Hodge continued to serve him despite his visible intoxication. Debczak testified that he frequently visited the bar and became intoxicated on each visit. On the basis of this evidence, a juror could conclude that the liquor licensee had greater culpability in this incident, because the licensee was responsible for allowing Debczak to reach so high a level of intoxication that he could not control his actions or resist Cheatham's offers. Viewing this evidence in a light most favorable to plaintiff, reasonable persons could agree that Gerald was four times more culpable than Debczak.

In this section of his brief, Gerald also asserts that the trial court wrongfully refused to instruct the jury that Debczak's defenses, including his intoxication defense, were also applicable to Gerald. Because the issue of instructional error was not raised in his statement of questions presented, review is inappropriate. *Hammack v Lutheran Social Services of Michigan*, 211 Mich App 1, 7; 535 NW2d 215 (1995). However, were we to review this issue, we would conclude that the purpose of the dramshop statute would be seriously undermined if the AIP's defense of intoxication were applicable to the licensee.

C

Gerald next asserts that the verdict and judgment should not be permitted to stand because neither complies with the statutory mandates of the tort reform act regarding specific findings for each defendant with respect to each type of damages. MCL 600.6305; MSA 27A.6305, MCL 600.6306; MSA 27A.6306.[4] In fact, the parties here *stipulated* that the

---

[4] MCL 600.6305; MSA 27A.6305 provides:

(1) Any verdict or judgment rendered by a trier of fact in a personal injury action subject to this chapter shall include specific findings of the following:

(a) Any past economic and noneconomic damages.

(b) Any future damages and the periods over which they will accrue, on an annual basis, for each of the following types of future damages:

(i) Medical and other costs of health care.

(ii) Lost wages or earnings or lost earning capacity and other economic loss.

(iii) Noneconomic loss.

(2) The calculation of future damages for types of future damages described in subsection (1)(b) shall be based on the costs and losses during the period of time the plaintiff will sustain those costs and losses. In the event of death, the calculation of future damages shall be based on the losses during the period of time the plaintiff would have lived but for the injury upon which the claim is based.

MCL 600.6306; MSA 27A.6306 provides, in pertinent part:

(1) After a verdict rendered by a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court. Subject to section 2959, the order of judgment shall be entered against each defendant, including a third-party defendant, in the following order and in the following judgment amounts:

(a) All past economic damages, less collateral source payments as provided for in section 6303.

(b) All past noneconomic damages.

(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible under section 6303(5) reduced to gross present cash value.

jury verdict form need not follow these statutes, and they waived any claim of violation of the tort reform act by using the shorter form. Thus, the issue is whether the trial court's agreement to disregard the statutory requirements and abide by the parties' stipulation constitutes error warranting reversal.

Where, as here, parties stipulate an arrangement that limits one party's rights to less than that which is otherwise required, that party may not later complain on appeal about this restriction. See *In re Vanidestine*, 186 Mich App 205, 212; 463 NW2d 225 (1990) (the respondent in a delinquency proceeding who was charged with criminal sexual conduct involving a child was precluded from asserting Confrontation Clause error on appeal where he had stipulated at criminal trial that the child could testify via a two-way closed-circuit television). We do not, by this result, conclude that it is acceptable for a trial court to disregard the tort reform requirements, which, by their terms, are mandatory. We merely conclude that because Gerald stipulated the use of the short verdict form, he cannot now seek relief on the basis that the trial court accepted that stipulation.

D

Gerald next contends that the jury verdict was grossly excessive and unduly influenced by passion and prejudice and, therefore, that he is entitled to a

---

(d) All future medical and other health care costs reduced to gross present cash value.

(e) All future noneconomic damages reduced to gross present cash value.

(f) All taxable and allowable costs, including interest as permitted by section 6013 or 6455 on the judgment amounts.

new trial or remittitur. The proper consideration of the trial court in determining a motion for remittitur is whether the jury award was supported by the evidence. *Phillips v Deihm*, 213 Mich App 389, 404; 541 NW2d 566 (1995). The trial court's inquiry is limited to objective considerations regarding the evidence adduced and the conduct of the trial. *Id.* Appellate courts must defer to a trial court's decision because of the trial court's superior ability to view the evidence and evaluate the credibility of the witnesses. *Id.*

Here, Gerald fails to make any specific arguments in support of his contention; his only point is that the size of the verdict proves that it was influenced by prejudice. We defer to the trial court's decision on a motion for remittitur; given the fact that Gerald points to nothing besides the size of the verdict to support his argument, we find no error.

Gerald also argues that the mediation award is a valid indication of the value of the damages. However, he cites no authority in support of this argument, and this Court will not search for authority to support a party's position. *Winiemko v Valenti*, 203 Mich App 411, 419; 513 NW2d 181 (1994). We decline to review the issue.

Gerald also argues that the evidence of damages did not support an award of this magnitude. However, plaintiff presented evidence that he suffered permanent brain damage that has seriously impaired his personality and cognitive abilities. Under these circumstances, the evidence could support the verdict. We therefore conclude that the trial court did not abuse its discretion in denying the motion for remittitur.

E

In his cross appeal, plaintiff Weiss alleges that the circuit court erred in denying his motion for costs, based upon the offer of judgment rule, MCR 2.405. We agree.

Here, defendant Hodge filed an offer to stipulate a judgment on July 15, 1994; twenty-eight days before trial. Plaintiff mailed his counteroffer on August 2, 1994; twenty-one days before trial. Although plaintiff ultimately prevailed at trial, the circuit court determined that plaintiff's counteroffer was untimely and denied plaintiff's request for costs pursuant to MCR 2.405 (offers to stipulate entry of judgment).

MCR 2.405 provides that actual costs, including reasonable attorney fees of the prevailing party, may be imposed against a party who has rejected an offer to settle and thereafter receives a less favorable verdict. Subsections D(1), (2), and (3) of the rule provide:

> (D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:
>
> (1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.
>
> (2) If the adjusted verdict is more favorable to the offeree than the average offer, the offeror must pay to the offeree the offeree's actual costs incurred in the prosecution or defense of the action. *However, an offeree who has not made a counteroffer may not recover actual costs.*
>
> (3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule. [Emphasis added.]

"Counteroffer" is defined as "a written reply to an offer, served within 21 days after service of the offer,

in which a party rejects an offer of the adverse party and makes his or her own offer." MCR 2.405(A)(2). The rule also provides:

> Offer. Until 28 days before trial, a party may serve on the adverse party a written offer to stipulate to the entry of a judgment for the whole or part of the claim, including interest and costs then accrued. [MCR 2.405(B).]

The issue here is whether a *counteroffer* must also be served twenty-eight days before trial in order for the offeree (the party making the counteroffer) to be eligible for costs under this rule. Here, the circuit court concluded that the counteroffer must indeed be served twenty-eight days before trial, and therefore the court denied plaintiff's motion for costs.

Plaintiff relies on *Gudewicz v Matt's Catering, Inc*, 188 Mich App 639; 470 NW2d 654 (1991), which we find instructive. In *Gudewicz*, the plaintiff made an offer of judgment thirty-one days before trial. The defendant counteroffered seventeen days before trial was scheduled to start. The jury returned a verdict that was more favorable to the defendant than the average offer, but the trial court determined that the defendant was not entitled to costs under the rule because the counteroffer was untimely. The trial court "seemingly concluded that, because a party has twenty-one days to respond to a counteroffer, MCR 2.405(C)(3), defendant's counteroffer, made seventeen days before trial, came too late." *Gudewicz, supra*, at 642. This Court disagreed, reasoning:

> We believe that the trial court misconstrued the court rule. Under the rule, a party has twenty-one days to respond to an offer by either accepting, rejecting, or countering. Defendant's counteroffer was submitted within that

twenty-one-day period and therefore should be deemed timely.

Under the trial court's construction, whenever a party submits an ' offer twenty-eight days before trial, MCR 2.405(B), the offeree would be forced to either (1) counter-offer within seven days, contrary to the twenty-one-day period set forth at MCR 2.405(A)(2); (2) file a meaningless counteroffer to avoid the provision of MCR 2.405(D)(2) that an offeree who has not counteroffered may not recover actual costs; (3) accept the offer without benefit of negotia-tion in order to avoid possible sanctions under MCR 2.405(D); or (4) reject the offer without benefit of negotia-tion and risk the imposition of sanctions. Each of these alternatives greatly limits or effectively eliminates the offeree's right to submit a counteroffer. The result is that, by waiting until the eve of trial to make an offer to stipulate to entry of judgment, an offeror can severely restrict the negotiating position of his offeree while simultaneously assuring that the offeree will not be able to recover costs should negotiations fail and the offeree ultimately prevail.

The purpose of MCR 2.405 is to encourage settlement and to deter protracted litigation. *Sanders v Monical Machinery Co*, 163 Mich App 689, 692; 415 NW2d 276 (1987). The result above is inconsistent with that purpose. Furthermore, in light of the obvious significance the Supreme Court has placed on counteroffers—by making them mandatory in order for a prevailing offeree to recover costs—we must reject that result.

*We conclude that when a party waits until shortly before trial to make an offer to stipulate to entry of judgment, the offeror must be deemed to have accepted the possibility of having less than the full twenty-one-day period to respond to a potential timely counteroffer.* This conclusion allows a party to make a last-minute offer, for strategic or other rea-sons, yet preserves the integrity of the offeree's right to sub-mit a counteroffer within twenty-one days of the offer. In this case, the fact that plaintiffs chose to accept the possi-bility of having less than twenty-one days to respond to defendant's counteroffer did not render the counteroffer

untimely, as the trial court held. [188 Mich App 642-643. Emphasis added.]

We agree with this reasoning and find defendant Hodge's reliance upon *Brooks v Gough*, 189 Mich App 623; 473 NW2d 771 (1991), inapposite. Here, defendant Hodge waited until twenty-eight days before trial to make his offer; by so doing Hodge is deemed to have "accepted the possibility of having less than the full twenty-one-day period to respond to [plaintiff's] counteroffer" submitted a week later. *Gudewicz, supra* at 643. On remand, the circuit court should determine plaintiff's actual costs and determine whether plaintiff is entitled to an award of attorney fees. MCR 2.405(D)(3).

In conclusion, the jury verdict is affirmed and this matter is remanded for the limited purposes of determining (1) plaintiff's actual costs and (2) whether, in the interest of justice, an attorney fee award should be made under MCR 2.405(D)(3).

Affirmed in part, reversed in part, and remanded with instructions. We do not retain jurisdiction. Plaintiff, being the prevailing party, is entitled to costs pursuant to MCR 7.219.