595 N.W.2d 157 (1999)
235 Mich. App. 500
Linda Marie HELDER, Plaintiff-Appellee,
v.
Edward Sruba and E.J.E.C.S. Corporation, d/b/a Neutral Corner, Defendants, and
NORTH POINTE INSURANCE COMPANY, Garnishee Defendant-Appellant.
Docket No. 198327.
Court of Appeals of Michigan.
Submitted August 11, 1998, at Grand Rapids.
Decided March 19, 1999, at 9:10 a.m.
Released for Publication June 22, 1999.
*158 Napieralski & Walsh, P.C. (by Peter P. Walsh), Grand Rapids, for Linda M. Helder.
Thomas M. Tupper, East Lansing, for North Pointe Insurance Company.
Before: SAAD, P.J., and JANSEN and HOEKSTRA, JJ.
SAAD, P.J.
North Pointe Insurance Company (garnishee defendant) appeals by leave granted the July 1, 1996, order granting plaintiff Linda M. Helder's motion for summary disposition brought under MCR 2.116(C)(9) (failure to state a valid defense). That order awarded Helder judgment against garnishee defendant for $100,000, plus interest, in satisfaction of a default judgment entered in plaintiff's favor against defendants Edward Sruba and E.J.E.C.S. Corporation in the underlying dramshop action. We reverse and remand.

FACTS AND PROCEEDINGS
North Pointe Insurance Company was the dramshop liability insurer for E.J.E.C.S., a bar doing business under the name of The Neutral Corner. Sruba was the owner of the bar and the principal operating officer of E.J.E.C.S. Plaintiff Helder was Sruba's girlfriend from the fall of 1991 until January 1994.
On May 2, 1994, Helder commenced this action against Sruba and E.J.E.C.S. According to plaintiff's complaint, employees of the bar served Sruba alcohol when Sruba was visibly intoxicated, following which Sruba would beat and verbally abuse plaintiff. Plaintiff alleged that the beatings and other abuse occurred between the summer of 1992 and January, 1994, with the last beating resulting in Sruba's criminal conviction.[1] The lower court record does not offer any details regarding this conviction.
Though the record provides no reason or explanation, neither Sruba nor E.J.E.C.S. answered plaintiff's complaint, but rather allowed the trial court to enter a default on September 22, 1994. Because the bar was in bankruptcy, Sruba or E.J.E.C.S. delayed proceedings in Helder's lawsuit against them. Accordingly, a default judgment in the amount of $100,749.51 did not enter until January 12, 1996. The judgment amount represented the mandatory minimum insurance the dramshop had to carry for two years (1992 and 1993), at $50,000 a year, under M.C.L. § 436.22a(2); MSA 18.993(1)(2). Contrary to Sruba's contractual obligation under the insurance *159 policy, and in violation of the insurer's contractual rights to defend dramshop lawsuitsneither defendant Sruba nor his lawyer advised the insurance carrier of this suit. The insurer was thus deprived of any opportunity to raise any defenses to Helder's claim that her former lover injured her because of drinks he consumed in his own bar.
Plaintiff obtained and served a writ of garnishment against North Pointe on February 12, 1996, seeking to recover insurance proceeds to satisfy the default judgment. North Pointe filed its garnishee disclosure on February 26, 1996, and denied it was indebted to Sruba or E.J.E.C.S. because "PRINCIPAL DEFENDANT DID NOT PROVIDE GARNISHEE WITH NOTICE OF PLAINTIFF'S CLAIM, AS REQUIRED BY DEFENDANT'S INSURANCE POLICY WITH GARNISHEE." According to North Pointe, the writ of garnishment was the first notice it received of plaintiff's claim against Sruba and E.J.E.C.S. Plaintiff claims that during the bankruptcy proceedings, Sruba notified his insurer of the claim pursuant to the instructions of his attorney.
Plaintiff moved for summary disposition on the ground that a lack of notice was not a valid defense to the garnishment. MCR 2.116(C)(9). Plaintiff contended that M.C.L. § 436.22f; MSA 18.993(6) prohibited North Pointe from asserting the notice provision in its policy as a defense against plaintiff's claim. North Pointe argued that M.C.L. § 436.22f; MSA 18.993(6) did not apply to a defense based on a complete lack of notice of a claim, citing Henderson v. Biron, 138 Mich.App. 503, 360 N.W.2d 230 (1984). Plaintiff responded that Henderson had been overruled by implication in Coburn v. Fox, 425 Mich. 300, 389 N.W.2d 424 (1986). The trial court agreed with plaintiff and granted her motion. We reverse.

LAW AND ANALYSIS
This appeal addresses the proper application of M.C.L. § 436.22f; MSA 18.993(6), which provides:
The [liquor liability] insurance policy hereinbefore mentioned shall cover the liability imposed by [MCL 436.22; MSA 18.993] and shall contain the following conditions:
That no condition, provision, stipulation or limitation contained in the policy, or any other endorsement thereon, shall relieve the insurer from liability (within the statutory limits provided by [MCL 436.22a; MSA 18.993(1) ] for the payment of any claim for which the insured may be held legally liable under section 22 of said act.) [Emphasis added.]
According to plaintiff's interpretation of this provision, an insured's failure to timely notify the insurer of a claim cannot relieve the insurer from liability. Garnishee defendant argues that plaintiff's interpretation "provides a blueprint for guaranteed recovery for plaintiffs who collude with insureds against their liquor liability insurer." We agree with garnishee defendant that plaintiff's interpretation is not only wrong, but would encourage fraudulent and collusive lawsuits.
It is well established that the primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. In re Messer Trust, 457 Mich. 371, 379-380, 579 N.W.2d 73 (1998). When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory. Western Michigan Univ. Bd. of Control v. Michigan, 455 Mich. 531, 541-542, 565 N.W.2d 828 (1997). Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest. McAuley v. General Motors Corp., 457 Mich. 513, 518, 578 N.W.2d 282 (1998). Plaintiff's interpretation is erroneous for many reasons, but primarily because it ignores a key phrase and creates absurd and unjust results.
*160 The statute clearly states that policy conditions, provisions, stipulations, and limitations may not relieve the insurer from liability "for the payment of any claim for which the insured may be held legally liable under section 22 of said act." MCL 436.22f; MSA 18.993(6) (emphasis supplied). An insurance carrier claiming that the insured's failure to comply with a policy notice of claim or suit requirement deprives the insurer of the opportunity to investigate the validity of a troublesome claim is not relying on a policy condition or provision to avoid paying a "claim for which the insured may be held legally liable." Plaintiff's interpretation ignores the final phrase of the provision, and requires the insurer to pay even those claims for which the insured could not be held legally liable. This would create an absurd result, authorizing a lucrative windfall for any plaintiff lucky enough to sue a dramshop licensee who says nothing to the insurer and defaults. Worse yet, collusive litigants would gain a lucrative windfall for any plaintiff and defendant dramshop licensee who arrange a collusive dramshop action, default judgment, and then commence a garnishment proceeding against an unsuspecting insurer.
Accordingly, we interpret the statute to mean that the insured's failure to notify the insurer, absent any evidence of prejudice to the insurer, cannot preclude the plaintiff's recovery. We agree with the interpretation placed on this very provision by our Court in Henderson, supra. There, we held that M.C.L. § 436.22f; MSA 18.993(6) does not bar a dramshop-liability insurer from asserting a failure to notify defense where that failure prejudiced the insurer.[2]Id., at 506, 360 N.W.2d 230. Ostensibly, the legislative intent behind this provision was to protect injured third parties who otherwise might be disadvantaged by the acts or omissions of insureds. Our interpretation does not thwart this legislative intent because insurers remain obligated to demonstrate prejudice arising from the insured's failure to notify. "[I]t is a well-established principle that an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position." Koski v. Allstate Ins. Co., 456 Mich. 439, 444, 572 N.W.2d 636 (1998). As this Court pointed out in Henderson, supra, at 507, 360 N.W.2d 230 "the insurance company still would have the burden of proving it was prejudiced by the insured's failure to notify it of the lawsuit." Furthermore, as a practical matter, plaintiffs can easily protect their interests by learning the insurer's identity through the discovery process or from public records and notifying the insurer of the action.
Moreover, our interpretation is consistent with Michigan policy disfavoring default judgments in order to achieve meritorious determinations of cases. Huggins v. MIC General Ins. Corp., 228 Mich.App. 84, 86, 578 N.W.2d 326 (1998); Levitt v. Kacy Mfg. Co., 142 Mich.App. 603, 607, 370 N.W.2d 4 (1985). This policy becomes more urgent where, as here, the party responsible for paying the default had no opportunity to prevent entry of the default.
We therefore remand to give garnishee defendant the opportunity to demonstrate that it was prejudiced by the lost opportunity to demonstrate that plaintiff's claim was not one for which the insured could be held legally liable.[3]
*161 Reversed and remanded. We do not retain jurisdiction.
HOEKSTRA, J., concurs.
JANSEN, J. (dissenting).
I respectfully dissent. I would hold that the trial court did not err in ruling that a dramshop liability carrier may not assert a lack-of-notice defense to a garnishment action because the applicable statute in this case, M.C.L. § 436.22f; MSA 18.993(6), clearly and unambiguously does not permit the insurer to relieve itself of liability under a lack-of-notice defense.
Pursuant to M.C.L. § 436.22f; MSA 18.993(6), liquor liability policies must contain a condition "[t]hat no condition, provision, stipulation or limitation contained in the policy, or any other endorsement thereon, shall relieve the insurer from liability... for the payment of any claim for which the insured may be held legally liable under [MCL 436.22; MSA 18.993]." Plaintiff asserts that this provision precludes defendant's lack-of-notice defense set forth in the dramshop liability policy. Garnishee defendant argues that this provision does not apply to a lack-of-notice defense, relying on this Court's decision in Henderson v. Biron, 138 Mich.App. 503, 360 N.W.2d 230 (1984).
This case requires us to construe and apply M.C.L. § 436.22f; MSA 18.993(6). The "cardinal rule" of statutory construction is to identify and give effect to the intent of the Legislature. Shallal v. Catholic Social Services, 455 Mich. 604, 611, 566 N.W.2d 571(1997); Turner v. Auto Club Ins. Ass'n, 448 Mich. 22, 27, 528 N.W.2d 681 (1995). The first step in discerning intent is to examine the language of the statute. Id. The language is to be read according to its ordinary and generally accepted meaning. Shallal, supra, p. 611, 566 N.W.2d 571. Judicial construction is authorized only where the statute lends itself to more than one interpretation. Id. When statutory language is clear and unambiguous, the court must honor the legislative intent as clearly indicated in that language and no further construction is required or permitted. Western Michigan Univ. Bd. of Control v. Michigan, 455 Mich. 531, 538, 565 N.W.2d 828 (1997); Turner, supra, p. 27, 528 N.W.2d 681. Therefore, where the statute is clear on its face, "the role of the judiciary is not to articulate its view of `policy,' but to apply the statute in accord with its plain language." Rogers v. Detroit, 457 Mich. 125, 140, 579 N.W.2d 840 (1998).
I find the language of M.C.L. § 436.22f; MSA 18.993(6) to be clear and unambiguous and, therefore, it must be applied as written. No provision or limitation contained in the dramshop liability policy can relieve the insurer from liability for which the insured may be held legally liable. Therefore, North Pointe cannot assert a lack-of-notice defense against plaintiff to preclude her from recovering her default judgment against defendants Sruba and E.J.E.C.S. Further, there is nothing absurd or unjust about applying the plainly worded statute as written to the facts of this case. None of the parties have attacked the default judgment, for which there are clear remedies,[1] and there is not one shred of evidence of fraud or collusion in this case. In this regard, I note that the Legislature has created a check against collusion by requiring the plaintiff to name and retain the intoxicated person who actually committed the injury as a defendant. See Browder v. Int'l Fidelity Ins. Co., 413 Mich. 603, 615, 321 N.W.2d 668 (1982); Salas v. Clements, 399 Mich. 103, 110, 247 N.W.2d 889 (1976).
I acknowledge that in Henderson, supra, p. 506, 360 N.W.2d 230, this Court held that the prohibition contained in § 22f does not preclude a dramshop liability insurer *162 from asserting a lack-of-notice defense. However, I believe that Henderson was wrongly decided on this point and Henderson is not binding on this Court because it predates the dictates of MCR 7.215(H)(1). This Court's decision in Henderson ignored the clear and unambiguous language of § 22f and did not apply the rules of statutory construction in holding that a dramshop liability insurer is not precluded from asserting a lack-of-notice defense. This Court's decision in Henderson clearly violates the rule of statutory construction that a clear and unambiguous statute must be applied as written. If the role of the judiciary is not to articulate its view of policy, but to apply the statute in accord with its plain language, Rogers, supra, p. 140, 579 N.W.2d 840, then, in applying § 22f in accord with its plain language, North Pointe cannot assert a lack-of-notice defense in this case.
Because § 22f is clear and unambiguous and must be applied as written, it is not necessary to consider whether the Supreme Court's decision in Coburn, supra,[2] implicitly overruled this Court's decision in Henderson. In any event, the facts and circumstances of Coburn are easily distinguishable from the present case because Coburn involved the automobile no-fault act and a lack-of-cooperation defense. In the same vein, North Pointe's reliance on Kleit v. Saad, 153 Mich.App. 52, 395 N.W.2d 8 (1985), and LeDuff v. Auto Club Ins. Ass'n, 212 Mich.App. 13, 536 N.W.2d 812 (1995),[3] is similarly misplaced because these two cases involve the no-fault act. This distinction is of further significance because M.C.L. § 257.520(f)(6); MSA 9.2220(f)(6) permits automobile no-fault insurers to assert a lack-of-notice defense. There is no similar provision regarding dramshop liability insurers, and § 22f of the dramshop act specifically precludes dramshop liability insurers from relying on their policies to relieve themselves of liability where the insured may be held legally liable.
Accordingly, I would apply the clear and unambiguous provision of § 22f of the dramshop act to the facts of this case. North Pointe may not assert a lack-of-notice defense, as set forth in the dramshop liability policy with defendants, to relieve itself of liability where the insured was legally liable for its actions.[4] I would affirm the trial court's judgment in favor of plaintiff.
NOTES
[1] Plaintiff's theory of dramshop liability for intentional torts is facially valid. Weiss v. Hodge (After Remand), 223 Mich.App. 620, 567 N.W.2d 468 (1997).
[2] However, we believe that Coburn, supra, and Kleit v. Saad, 153 Mich.App. 52, 395 N.W.2d 8 (1985), are inapplicable here because they involve the no-fault act, which is materially different from the dramshop liability act.
[3] As garnishee defendant, North Pointe bears the burden of establishing prejudice. Kleit, supra, at 58, 395 N.W.2d 8. The issue of prejudice involves a finding of fact for the trial court. Id. In requiring the insurer to establish prejudice, Michigan law is more lenient than some other jurisdictions where prejudice is presumed as a matter of law when the insured defaults after failing to notify the insurer. See, for example, Harwell v. State Farm Mut. Automobile Ins. Co., 896 S.W.2d 170, 174 (Tex., 1995).
[1] See MCR 2.603(D), 2.612.
[2] In Coburn, supra, p. 312, 389 N.W.2d 424, our Supreme Court held that the noncooperation of the insured is not a valid defense in an action between a third-party victim and an insurer to the extent of the statutorily required minimum residual liability insurance because of the compulsory nature of no-fault liability insurance.
[3] The cases of Kleit and LeDuff present the rule that a no-fault liability insurer may be relieved of its liability if it did not receive timely notice of the lawsuit between its insured and the third-party and was prejudiced by the lack of notice.
[4] Here, legal liability has been established because liability against a liquor licensee under the dramshop act may be premised on the commission of an intentional tort (here, an assault) by the intoxicated person who was provided the alcohol while visibly intoxicated. Weiss v. Hodge (After Remand), 223 Mich.App. 620, 567 N.W.2d 468 (1997).